UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, | |
| Plaintiff, | No. 20 CV 7032 |
| v. | Judge Manish S. Shah |
| JAMES A. COSMANO, et al., | |
| Defendants. | |

MEMORANDUM OPINION AND ORDER

Defendant James Cosmano hasn't paid the mortgage on his Chicago condo in years. Plaintiff Wilmington Savings Fund Society, FSB (as owner trustee of CSMC 2018-SP3 Trust), owns the mortgage and filed this foreclosure suit. Cosmano also owes millions in delinquent taxes. The United States filed a counterclaim and removed the case to federal court to enforce its tax lien under 26 U.S.C. § 7403. Both Wilmington and the United States move for summary judgment, and Wilmington moves to appoint a special commissioner to conduct a public sale of the property. For the reasons that follow, the motions for summary judgment are granted, but the motion to appoint a special commissioner is denied. The court will exercise its discretion under 26 U.S.C. § 7403 to appoint a receiver to arrange the sale of the property and enforce the government's lien.

## I.    Legal Standards

Summary judgment is proper when there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

I construe all facts and reasonable inferences in favor of the nonmoving party. *Robertson v. Department of Health Services*, 949 F.3d 371, 377–78 (7th Cir. 2020). While the onus is on the moving party to show summary judgment is appropriate, the non-moving party "may not rest upon mere allegations in the pleadings" and instead "must go beyond the pleadings and support … contentions with proper documentary evidence." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (citation omitted). The moving party is entitled to summary judgment when the nonmoving party fails to make "a sufficient showing on an essential element" of her case for which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.    Background

James Cosmano purchased a condo at 450 E. Waterside Drive in October 2007. [54] ¶ 23.[1] Cosmano borrowed $755,650 from ING Bank, FSB, executed an adjustable-rate promissory note, and granted ING a mortgage to the condo as security. *Id.* ¶¶ 1, 3. The mortgage was recorded with the Cook County Recorder of Deeds in November 2007. *Id.* ¶ 4. In April 2019, Capital One, N.A (successor in interest upon merger with ING) assigned the mortgage to Mortgage Electronic Registration Systems, Inc.; a few months later, MERS assigned the mortgage to CSMC 2018-SP3 Trust. *Id.* ¶¶ 5–6. In August 2020, CSMC 2018-SP3 Trust assigned

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except in the case of citations to depositions, which use the deposition transcript's original page number. The facts are largely taken from Cosmano's combined response, [54], to Wilmington's Local Rule 56.1 statements, [35], and the Government's statement of additional material facts, [48], where both the asserted fact and the opposing party's response are set forth in one document.

2

the mortgage to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as owner trustee of CSMC 2018-SP3 Trust. *Id*. ¶ 7. Cosmano failed to make payments on the loan due on and after July 2019; as of June 2021, Cosmano owed $611,847.49. *Id*. ¶¶ 9–10. Cosmano offered two appraisals from March 2019 and May 2020 valuing the property at $505,000 and $497,500, respectively. [53] ¶¶ 22–23.[2]

Cosmano also owed the IRS millions in taxes. On February 9, 2015, the IRS filed a Notice of Federal Tax Lien with the Cook County Recorder of Deeds for Cosmano's 2007, 2008, 2009, and 2010 income tax years. [54] ¶ 25.[3] In January 2018, the government obtained a final judgment against Cosmano, *see United States v. Cosmano*, N.D. Ill. No. 17-cv-05721, for the unpaid income taxes from 2007 through 2010, plus penalties and interest, totaling $6,051,979.50. *Id*. ¶ 26. In September 2018, the IRS recorded an abstract of the judgment with the county recorder. *Id*. ¶ 14. As of August 2021, Mr. Cosmano's outstanding income tax liability totaled $7,090,529.33, and statutory additions continue to accrue from that date. *Id*. ¶ 27.[4]

---

[2] Because Wilmington failed to properly controvert these facts with evidence, they are admitted. *See* Local Rule 56.1(e)(3) ("To dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."). Wilmington argues that Cosmano did not lay the foundation to introduce the appraisals as business records, but "no rule of evidence requires a 'foundation'; 'foundation' is simply a loose term for preliminary questions designed to establish that evidence is admissible." *A.I. Credit Corp. v. Legion Ins. Co.*, 265 F.3d 630, 637 (7th Cir. 2001). The signed appraisals offer a sufficient basis, at this stage, to conclude that the appraisers have personal knowledge of matters in their reports. Whether they are entitled to any weight is an issue for another day, and issues over the value of the property do not defeat either creditor's motion for summary judgment.

[3] The United States refiled its Notice of Federal Tax lien as to Cosmano in 2020. [54] ¶¶ 13, 25.

[4] Cosmano denies that he owes any in-personam sum to the United States due to his Chapter 7 Bankruptcy. [54] ¶ 27. But the issue here concerns the government's enforcement

In 2019, Cosmano filed for bankruptcy under Chapter 7. *See In re James Cosmano, Bankr*. N.D. Ill. No. 19-13287.

In October 2020, Wilmington filed suit in the Circuit Court of Cook County to foreclose the mortgage. [54] ¶ ¶15, 31. The United States timely removed the case to federal court and filed a counterclaim seeking to enforce its federal tax liens against the property. *Id*. ¶¶ 17, 32; *see also* [1], [7]. Wilmington and the United States each move for summary judgment. [33], [46]. Wilmington also moves to appoint a special commissioner to conduct a public judicial foreclosure sale of the property. [50].

## III. Analysis

### A. Summary Judgment

#### 1. Foreclosure

Wilmington is entitled to summary judgment on its mortgage foreclosure claim against Cosmano. The Illinois Mortgage Foreclosure Law, 735 ILCS 5/15–1101 *et seq*., governs foreclosure proceedings in Illinois. A mortgagee may foreclose its interest in real property upon "either the debt's maturity or a default of a condition in the instrument." *Heritage Pullman Bank v. American National Bank & Trust*, 164 Ill.App.3d 680, 685 (1st Dist. 1988). A plaintiff establishes a prima facie case for foreclosure with the introduction of the mortgage and note. *See Bank of Am., N.A. v. Schroeder*, 2021 IL App (3d) 200339, ¶ 23 (citing 735 ILCS 5/15-1504(a), (b)); *Farm Credit Bank of St. Louis v. Biethman*, 262 Ill.App.3d 614, 622 (5th Dist. 1994). Under

---

of a tax lien against the property under 26 U.S.C. § 7403. As defendant notes, issues of dischargeability are currently being litigated in the concurrent bankruptcy proceedings. *Id*. ¶¶ 27, 30.

the Illinois Supreme Court Rule governing practice and procedure in mortgage foreclosure cases, "a copy of the note, as it currently exists, including all indorsements and alonges, shall be attached to the mortgage foreclosure complaint at the time of filing." ILCS S. Ct. Rule 113(b). If the plaintiff establishes a prima facie case, "the burden shifts to the defendant to prove any affirmative defenses that the defendant has raised, including the lack of standing." *Schroeder*, 2021 IL App (3d) 200339, ¶ 23.

There's no dispute that Wilmington attached to the complaint the mortgage, note, allonge,[5] and assignments of the mortgage, and Cosmano admits he's in default on the loan. *See* [17]; [54] ¶¶ 9–10. The attachment of a note to a complaint, along with a blank endorsement, is prima facie evidence that Wilmington owns the note. *See Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 26. Wilmington also offered an affidavit from the loan servicer's document control officer stating that "Capital One, N.A. as successor in interest upon merger with ING Bank, FSB indorsed the Note in blank by executing an allonge. A true and correct copy of the allonge is attached as the last page of Exhibit A." [35-2] at 4, ¶ 7; *see also Garner*, 2013 IL App (1st) 123422, ¶ 26 ("A note endorsed in blank is payable to the bearer."). As such, Wilmington has established a prima facie foreclosure case.

Cosmano argues, however, that Wilmington lacks standing because "the allonge appears not to be attached to the note (no staple marks or other evidence of attachment) and as such the allonge is not effectual." [29] at 11. Cosmano contends

---

[5] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *See* Black's Law Dictionary (11th ed. 2019).

that the absence of evidence of attachment creates a factual dispute that precludes summary judgment.

Cosmano has failed to muster evidence supporting his affirmative defense. Cosmano bore the burden of providing some evidentiary basis for his affirmative defense. *See Schroeder*, 2021 IL App (3d) 200339, ¶ 23. Summary judgment is the "put up or shut up" moment in a lawsuit, *see Weaver*, 3 F.4th at 938 (citation omitted), and Cosmano must go beyond the pleadings and support affirmative defenses with evidence. *See Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 976 (7th Cir. 2020); *see also Oasis Legal Fin. Operating Co., LLC v. Chodes*, 454 F.Supp.3d 724, 737 (N.D. Ill. 2020) ("To defeat summary judgment on an affirmative defense, defendants must offer evidence that would allow a reasonable jury to find for them on that defense." (citing *United Central Bank v. Wells Street Apartments, LLC*, 957 F.Supp.2d 978, 988 (E.D. Wis. 2013))). The lack of visible staple marks does not create a material dispute regarding attachment. *See Olive Portfolio Alpha, LLC v. 116 W. Hubbard St.*, LLC, 2017 IL App (1st) 160357, ¶¶ 36, 38 (paper clips may affix allonge). And there is nothing in the record—no affidavit, deposition, or other admissible evidence—suggesting that Wilmington lacks standing. With no evidence buttressing Cosmano's

only viable affirmative defense,[6] Wilmington is entitled to summary judgment on its foreclosure claim against Cosmano.[7]

### 2. Tax Lien Enforcement

The United States is also entitled to summary judgment on its lien-enforcement claim against Cosmano. When a person is liable for any tax and fails to pay upon demand, "the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The statute "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 719–20 (1985); *see also Glass City Bank v. United States*, 326 U.S. 265, 267 (1945) ("Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes."). Federal tax liens attach "at the time the tax assessment is made, and it continues until the liability has been satisfied or it becomes unenforceable due to the lapse of time." *United States v. Librizzi*, 108 F.3d

---

[6] Cosmano also asserts (as an affirmative defense) that he has no personal liability to Wilmington as a result of bankruptcy discharge. [29] at 11, ¶ 1. But lack of personal liability due to bankruptcy discharge is not a defense against foreclosure. *See Johnson v. Home State Bank*, 501 U.S. 78, 84–85 (1991) (bankruptcy discharge extinguishes creditor's right to proceed in personam against debtor but not the right to proceed in rem in a mortgage foreclosure action). What's more, Wilmington's complaint and statement of facts state that it does not seek to hold Cosmano personally liable here. [17] at 5, ¶ 4(m); [54] ¶ 11.

[7] Although Wilmington raised the issue of attorneys' fees in its opening brief, in reply plaintiff decided to drop the issue at this stage, noting it will comply with Local Rule 54.3 and seek fees after entry of judgment. [51] at 3 n.2.

136, 137 (7th Cir. 1997) (citing 26 U.S.C. § 6322). Once attached, "the lien cannot be extinguished (assuming proper filing and the like) simply by a transfer or conveyance of the interest." *United States v. Rodgers*, 461 U.S. 677, 691 n.16 (1983)

But federal tax liens are not self-executing. *See Nat'l Bank of Com.*, 472 U.S. at 720. Section 7403 of the Internal Revenue Code provides the government with one tool to collect delinquent taxes: a right of action to enforce its liens. *See* 26 U.S.C. § 7403(a); *United States v. Adent*, 821 F.3d 911, 914 (7th Cir. 2016).[8] In such a case:

> The court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c). Finally, the statute provides that the court "may appoint a receiver to enforce the lien." *Id.* § 7403(d). The common purpose underlying § 7403—and other tax-collection tools at the government's disposal—"is to ensure the prompt and certain enforcement of the tax laws in a system relying primarily on self-reporting." *Rodgers*, 461 U.S. at 683.

---

[8] The court has jurisdiction under 26 U.S.C. § 7402, which provides:

> The district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction, and of ne exeat republica, orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws.

26. U.S.C. § 7402(a).

It is undisputed that Cosmano acquired the condo in 2007 and the IRS made assessments of tax liabilities and penalties against Cosmano for tax years 2007 through 2010. As of August 2021, those liabilities totaled $7,090,529.33, and statutory additions continue to accrue. Because Cosmano failed to pay after demand, the government's tax lien attached to his property under 26 U.S.C. § 6321 and the government is entitled to enforce the lien under 26 U.S.C. § 7403.

Cosmano argues that until the bankruptcy court determines the dischargeability and value[9] of the government's claim, a material fact remains at issue, precluding summary judgment. The pending proceedings do not limit the government's ability to enforce its lien, however, because "bankruptcy law permits a lien to pass through bankruptcy unaffected provided that it's a valid lien and secures a valid claim." *Palomar v. First American Bank*, 722 F.3d 992, 993 (7th Cir. 2013). So the government, as a valid-lien holder here, "can if [it] wants ignore the bankruptcy proceeding and enforce [its] claim by foreclosing the lien." *Id*. at 993–94. A potential discharge of Cosmano's liabilities in the pending bankruptcy proceeding does not diminish the government's ability to separately enforce its valid lien.

---

[9] Cosmano also says the government's lien is valueless because Wilmington's interest ($611,847.49) is worth more than the property, based on the 2019 and 2020 appraisals. But the current value of the property, even if less than the government's interest, would not somehow render government's lien against the property unenforceable. *See Palomar v. First American Bank*, 722 F.3d 992, 994 (7th Cir. 2013). And as the government points out in its recent filing, [62], there is reason to be skeptical of Cosmano's estimation of the property's value.

### 3. Priority

The United States clarified that it named Wilmington in its counterclaim only to comply with 26 U.S.C. § 7403(b) (providing that "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto"). Wilmington and the government agree that Wilmington has the superior lien for a debt in the amount of $611,847.49, plus reasonable and provable attorneys' fees under 26 U.S.C. § 6323(e), and the United States has a junior claim to anything left over.

## B. Remedy

Wilmington and the government diverge on the appropriate remedy. Both Wilmington and the United States call for judicial sale of the property. The parties differ, however, on how to conduct the sale. Wilmington wants a public auction led by an appointed special commissioner, while the government requests that I appoint a receiver to manage a private sale.

The Internal Revenue Code authorizes the appointment of receivers and, more broadly, the issuance of other orders to enforce tax liens. *See* 26 U.S.C. §§ 7402(a), 7403. The Code provides that, in all lien-enforcement cases where a claim or interest of the United States is established, a court "may decree a sale of such property, by the proper officer of the court, and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(c). In any such proceeding, "at the instance of the United States, the court may appoint a receiver to enforce the lien." *Id.* § 7403(d). In

requesting the appointment of a receiver under § 7403(d), "the Government needs only to make a prima facie showing that a substantial tax liability probably exists and that the Government's collection efforts may be jeopardized if a receiver is not appointed." *Matter of McGaughey*, 24 F.3d 904, 907 (7th Cir. 1994). While appointing a receiver is discretionary under the statute, such discretion is limited and must be "exercised rigorously and sparingly, keeping in mind the Government's paramount interest in prompt and certain collection of delinquent taxes." *United States v. Adent*, 821 F.3d 911, 915 (7th Cir. 2016) (quoting *Rodgers*, 461 U.S. at 711).

Wilmington contends that a private sale would be unnecessarily costly and have little practical impact. If the government is not satisfied with the final public-sale price, Wilmington argues, it could exercise its statutory right to redeem or bid on the property and resell it at a later date. The government, on the other hand, argues that that Cosmano owes substantial taxes and a private sale will maximize proceeds from sale and better protect all parties.

To ensure prompt and certain collection of the substantial unpaid taxes at issue here, I conclude that appointment of a receiver to enforce the lien is the proper remedy. A private sale conducted by a receiver provides a more efficient means to extract maximum value from a single sale, securing certain payment of delinquent taxes and avoiding the need for the government to conduct a second sale. In either case, Wilmington will receive full payment before the United States receives distribution. While Wilmington holds a superior interest in the property, courts have broad authority in tax-lien enforcement cases to order the sale of property and to

11

appoint receivers in "all cases where a claim or interest of the United States therein is established." 26 U.S.C. § 7403(c), (d). The statute also contemplates situations like this one by authorizing courts to distribute the proceeds of any sale "according to the findings of the court in respect to the interests of the parties and of the United States." *Id*. § 7403(c). And I'm confident that judicial supervision will ensure that the receiver will proceed expeditiously toward sale at a market rate.

## IV. Conclusion

Wilmington's motion for summary judgment, [33], and government's motion for summary judgment, [46], are granted. Wilmington is entitled to judgment of foreclosure and sale of the property at 450 E. Waterside Drive, Unit 1301, Chicago, IL; the United States is entitled to enforce its tax lien against the subject property, but Wilmington's mortgage has priority over the government's lien. Wilmington's motion to appoint a special commissioner, [50], is denied. The government's motion for default judgment against Chandler Condominium Association, [41], is granted. The parties shall confer and submit a proposed judgment order and order appointing a receiver by February 8, 2022.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: January 18, 2022