IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF CSMC 2018-SP3 TRUST,<br><br>Plaintiff,<br><br>v.<br><br>JAMES A. COSMANO, CHANDLER, CONDOMINIUM ASSOCIATION, UNITED STATES OF AMERICA, UNKNOWN OWNERS, and NON-RECORD CLAIMANTS,<br><br>Defendants.<br><br>UNITED STATES OF AMERICA,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF CSMC 2018-SP3 TRUST, JAMES A. COSMANO, CHANDLER CONDOMINIUM ASSOCIATION, and COOK COUNTY, ILLINOIS,<br><br>Counterclaim Defendants. | Case No. 1:20-cv-7032-MSS-SEC<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Susan E. Cox |

**Defendant and Counterclaim Plaintiff United States Of America's Memorandum Of Law In Support Of Its Motion For Order To Show Cause Why Defendant And Counterclaim Defendant James Cosmano Should Not Be Held In Civil Contempt**

Defendant and counterclaim plaintiff United States of America submits this

memorandum of law in support of its motion for an order to show cause why defendant and

1

counterclaim defendant James Cosmano should not be held in civil contempt for violating the Court's Order Appointing Receiver, entered February 17, 2022 (Doc. 66), and Order Enforcing Order Appointing Receiver, entered March 6, 2022 (Doc. 69-1).

**Preliminary Statement**

On November 29, 2020, the United States removed to this Court a suit filed by Plaintiff and Counterclaim Defendant Wilmington Savings Fund Society, FSB ("Wilmington") to foreclose a mortgage which encumbered the real property located at 450 E. Waterside Dr., Unit #1301, Chicago, IL 60601 (the "Property"). (*See generally* Doc. 1.). On January 5, 2021, the United States answered Wilmington's complaint and filed a counterclaim seeking to enforce federal tax liens that arose upon the assessment of taxes against James Cosmano, the owner of the Property, against the Property. (Doc. 7). Mr. Cosmano is a licensed Illinois attorney and is a member of this Court's general bar.

On September 1, 2021, the United States filed a motion for summary judgment, seeking a determination that it is entitled to enforce the federal tax liens by selling the Property. (Doc. 46). On January 7, 2022, while the summary judgment motion was pending, the United States filed a status report in which it noted Mr. Cosmano's history of relying on certain appraisals of the Property to argue that the value of the United States' liens on the Property was zero. (Doc. 62).

In order to try to sell the Property for the highest price, the United States contacted Ginger Menne, a local real estate agent familiar with the building in which the Property is located (the Chandler Condominiums), to provide her opinion of the value of the Property. *Id.* at ¶ 13. On November 13, 2021, Ms. Menne visited the Property, expecting (based on her prior experience with the Chandler and knowledge of the standard floorplans) to see a three-bedroom, three-bathroom condominium, but found that a wall had been erected across the doorway leading

to the master bedroom suite to block access and conceal the true size of the Property. *Id.* at ¶ 16-19; Declaration of Ginger Menne ("Menne Decl.") at ¶ 2.[1] In addition, a wall had been removed between the main living area and another bedroom, thus converting the unit into a one-bedroom unit. (Doc. 62) at ¶20; Menne Decl. at ¶ 2. None of the work done had been approved by the Chandler's management. (Doc. 62) at ¶ 24.

On January 28, 2022, the Court issued a Memorandum Opinion and Order which, among other things, granted the United States' motion for summary judgment. (Doc. 64). On February 17, 2022, the Court issued a Final Judgment which, among other things, stated that the United States was entitled to enforce its liens against the Property by judicial sale, and that such sale would be conducted by a receiver under 26 U.S.C. § 7403(d). (Doc. 65).

Also on February 17, 2022, the Court entered an Order Appointing Receiver which appointed Ginger Menne as Receiver to sell the Property. Among the provisions of the Order were: (1) "[a]ll parties shall cooperate fully with the receiver"; (2) "[a]ll persons occupying the subject property shall, no later than thirty days after the entry of this order, vacate and depart from the subject property, leaving in place all fixtures, appliances, and improvements without disturbance to the premises"; (3) "[n]o party shall take any action to remove the false wall (or any property located in the areas behind that wall) unless the receiver and representatives of the United States are present for the removal of the wall"; and (4) "Defendant James A. Cosmano shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so." (Doc. 66).

---

[1] The Declaration of Receiver Ginger Menne, Declaration of Deputy U.S. Marshal Troy Brejc, and Government Exhibits A, B, C, and D are attached to the associated motion filed simultaneously herewith.

3

During the week of February 28, 2022, counsel for the United States, Ms. Menne, and counsel for Cosmano, Paul Bach, discussed arranging a time where it would be suitable for the Receiver to conduct a walk-through of the Property to ascertain what repairs needed to be made so that she could arrange for the marketing and sale of the Property once Cosmano had vacated the property. Attorney Bach relayed that his client was not able to accommodate any times for the visit during the week of February 28th, as he was busy cleaning up the condo and moving out his personal effects. Attorney Bach also said that his schedule was such that it would be difficult to arrange for a visit that week since he would like to be present to ensure things went smoothly since his client was upset at the fact that his condominium was going to be sold. Attorney Bach proposed a meeting at the Property at 11:00 a.m. CST on Monday, March 7, 2022. All parties agreed on this time and date. (Doc. 67-1) at ¶ 2.

On March 4, 2022, and March 5, 2022, James Cosmano, accompanied by other individuals, accessed the Property and removed fixtures, appliances, and improvements, including but not limited to cabinets, countertops, the washing machine, refrigerator, and sinks, from the Property. Menne Decl. at ¶ 3-5.

On March 4, 2022, Geneva Everett, Property Manager at the Chandler Condominiums, contacted Ms. Menne to let her know that that James A. Cosmano was removing fixtures from the Property. Menne Decl. at ¶ 3. Ms. Menne arrived at the Property to find that James Cosmano had destroyed the false wall which had concealed the master bedroom suite, and had removed fixtures, appliances, and improvements from the Property. *Id.* At the request of the Receiver, the locks on the Property were changed. *Id.*

On March 5, 2022, Ms. Everett contacted Ms. Menne again to inform her that Mr. Cosmano had accessed the Property again despite the locks having been changed. Menne Decl.

4

at ¶ 4. Ms. Menne called the Chicago Police Department and went to the Chandler. Menne Decl. at ¶ 4. The CPD arrived at the Chandler shortly before the Receiver, who informed the officers that there was a court order against Mr. Cosmano, and an officer observed an individual exiting the Property and carrying a fixture onto the elevator. Government Exhibit ("G. Ex.") A. Ms. Menne spoke to Mr. Cosmano and informed him that he was not allowed on the premises, after which he left the Chandler. Menne Decl. at ¶ 4. CPD officers walked through the Property with Ms. Menne, who noted the damage that had been done to the Unit. Menne Decl. at ¶ 4. Ms. Menne left the Property, and returned later that afternoon with a contractor to secure the front door, but noticed that the water under the sink in the master suite bathroom had been left running. Menne Decl. at ¶ 4.

Overall, substantial damage was done to the Property by Mr. Cosmano and his associates. Many fixtures and improvements have been removed, including the sinks, countertops, and cabinets in the kitchen and all of the bathrooms, and piping from the kitchen and one of the bathrooms had been removed or detached. Menne Decl. at ¶ 5. All of the appliances have also been removed, including the refrigerator, stove, dishwasher, washer and dryer. *Id.* The false wall blocking off the master bedroom suite has been destroyed and any personal property that was in the master bedroom suite behind the false wall has been removed with the exception of a television, which was taken down from the wall but left in the Unit. *Id.* The built-in shelving in the master bedroom closets has been removed. *Id.* Trim affixed between the floor and the windows in the living room had been removed. *Id.* The front door has been damaged from being kicked in or pried open. *Id.* The wood floors have been scratched and damaged from the removal of the fixtures appliances, and improvements, portions of the flooring show signs of water damage, and large portions of the Property have been covered in dust and debris. *Id.*

On Sunday, March 6, 2022, the United States filed an emergency motion to enforce the Order Appointing Receiver. (Doc. 67). The United States informed the Court of the damage that Mr. Cosmano had done to the Property and requested that the Court order Mr. Cosmano to, among other things, vacate the Property immediately, and return all fixtures and appliances which had been removed from the Property. *Id*. The Court granted the motion the same day, and issued an Order Enforcing Order Appointing Receiver, which provided that James Cosmano "shall immediately return to the United States Marshals Service all fixtures or appliances removed from the [Property], and United States Marshals Service shall ensure that such property is safely returned to the Receiver or the [Property]." (Doc. 69-1).

On March 8, 2022, a Deputy U.S. Marshal, Troy Brejc, served a copy of the Order Enforcing Order Appointing Receiver on James Cosmano. Declaration of Troy Brejc ("Brejc Decl.") at ¶ 2. On March 11, 2022, the undersigned sent a letter to Mr. Cosmano's attorney reminding him of his client's obligation to return the fixtures and appliances to the U.S. Marshals Service. G. Ex. B. On March 14, 2022, Mr. Cosmano's attorney sent a letter to the undersigned stating that Mr. Cosmano would return the fixtures and appliances to the Receiver through the U.S. Marshals. G. Ex. C. The following day, Mr. Cosmano contacted Deputy Marshal Brejc and confirmed that he understood that he had to return the items as set forth in the Order, and said that he would contact a mover to return the items. Brejc Decl. at ¶ 3. Mr. Cosmano confirmed that he would have the items delivered to the Chandler on March 29, 2022, at 2:00 p.m. local time. *Id.*

On March 29, 2022, the movers hired by Mr. Cosmano arrived at the Chandler before the appointed time and left the items they were to deliver on the Chandler's loading dock. Menne Decl. at ¶ 7; Brejc Decl. at ¶ 4. The Receiver was contacted by the Chandler's management and

6

arrived an hour later to find that the movers were no longer at the Chandler. Menne Decl. at ¶7. Deputy Marshal Brejc arrived at the Chandler at approximately 1:30 p.m. local time and he, along with the Receiver and a contractor (who the Receiver requested to view the condominium and assess the damage), met one of the movers (who had returned to the building) and were present when the mover brought the items up to the Unit. Menne Decl. at ¶ 7; Brejc Decl. at ¶ 4. The items Mr. Cosmano returned were two bathroom countertops (one of which was from the master bathroom suite), a bathroom sink, and a refrigerator, which was not the same refrigerator that was taken from the Unit and was of lesser quality. Menne Decl. at ¶ 7; Brejc Decl. at ¶ 4. However, the remaining fixtures and all of the appliances that were taken from the Unit were not returned. *Id.*

## Argument

**I. Defendant and Counterclaim Defendant James Cosmano is in contempt of Court.**

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Civil contempt sanctions "are designed either to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy." *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001).

A court may hold in civil contempt a party who has "violated an order that sets forth in specific detail an unequivocal command from the court." *Dowell*, 257 F.3d at 699.

> **A. The Court's orders set forth in specific detail unequivocal commands from the Court.**

The Court's Order Appointing Receiver and Order Enforcing Order Appointing Receiver are orders that set forth in specific detail a number of unequivocal commands from the Court. The Order Appointing Receiver, states (¶ 4) that "[a]ll persons occupying the subject property

7

shall, no later than thirty days after the entry of this order, vacate and depart from the subject property, leaving in place all fixtures, appliances, and improvements without disturbance to the premises." It also states (¶ 5) that "[n]o party shall take any action to remove the false wall (or any property located in the areas behind that wall) unless the receiver and representatives of the United States are present for the removal of the wall." Finally, it states (¶ 8) that "Defendant James A. Cosmano shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so."

The Order Enforcing Order Appointing Receiver sets forth (¶ 4) the clear command that James Cosmano "shall immediately return to the United States Marshals Service all fixtures or appliances removed from the [Property], and United States Marshals Service shall ensure that such property is safely returned to the Receiver or the [Property]."

### B. Cosmano had knowledge of the Court's Orders.

James Cosmano knows about the Court's Orders. He has participated in this case from the outset and his attorney was served with a copy of the Order Appointing Receiver through the Court's CM/ECF system. Mr. Cosmano's attorney and counsel for the United States exchanged emails and telephone calls regarding the requirements of the Order Appointing Receiver. The Order Appointing Receiver provided that Cosmano had thirty days to vacate the Property after the Receiver was appointed (¶ 4), but during that thirty day period, the Receiver was allowed immediate and unrestricted access to the Property in order to prepare it for listing and sale (¶ 2). During the week of February 28, 2022, counsel for the United States contacted Mr. Cosmano's attorney to alert him that the Receiver, as was her prerogative, was planning to visit the Property that week to assess its condition. During those conversation, Mr. Cosmano's attorney relayed a

8

request from his client for more time to clean up the condominium and remove his personal property, and scheduled a walk through with the Receiver on March 7, 2022. (Doc. 67. Mr. Cosmano's attorney was also served with a copy of the Order Enforcing Order Appointing Receiver through the CM/ECF system, and Mr. Cosmano was served in person with a copy by Deputy Marshal Brejc. Brejc Decl. at ¶ 2.

### C. There is clear and convincing proof of Cosmano's violations of multiple provisions of the Orders.

Clear and convincing evidence of noncompliance exists where the movant provides a "quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002) (internal quotation and citation omitted).

In this case, there is clear and convincing evidence that Mr. Cosmano violated a number of provisions of the Court's orders. First, the Order Appointing Receiver provides (¶ 4) that "[a]ll persons occupying the subject property shall, no later than thirty days after the entry of this order, vacate and depart from the subject property, leaving in place all fixtures, appliances, and improvements without disturbance to the premises." Mr. Cosmano entered the Property with a number of associates and removed a number of fixtures, appliances, and improvements, including but not limited to the kitchen and bathroom cabinets, the kitchen and bathroom countertops, the kitchen and bathroom sinks, built-in shelving from the bedroom closets, the washing machine and dryer, the stove, and the refrigerator.[2] Menne Decl. at ¶ 3-5. In addition,

---

[2] As part of a filing in his adversary proceeding, Mr. Cosmano admitted to taking items from the Unit but seeks to characterize the items he took as "personal property." *Cosmano v. United States*, Adv. Proc. No. 21-00059 (N.D. Ill.) (Doc. 30). Even assuming Mr. Cosmano was credible on this issue, his subjective belief will not avail him to escape civil contempt for his actions. *See Taggart v. Lorenzen*, 139 S. Ct. 1795, 1802-03 (2019) (Under "traditional civil

(continued...)

Mr. Cosmano and his associates broke the front door, removed the false wall, covered the Property in construction debris, and damaged the wood floors. Menne Decl. at ¶ 4-5. Mr. Cosmano's removal of the fixtures, appliances, and improvements, and the damage done to the Property (which certainly constitutes "disturbance to the premises") is a violation of a clear and unequivocal command of the Court.

Second, the Order Appointing Receiver provides (¶ 5) that "[n]o party shall take any action to remove the false wall (or any property located in the areas behind that wall) unless the receiver and representatives of the United States are present for the removal of the wall." When the Receiver entered the Property, Mr. Cosmano and/or his associates had destroyed the false wall, which is itself a violation of a clear and unequivocal command of the Court. Menne Decl. at ¶ 3. It is unclear, however, whether Mr. Cosmano compounded his violation of the Order with a further violation by removing any property located in areas behind the false wall, and he should be required to provide an itemized list of all things he removed or caused to be removed from behind the false wall.

Third, the Order provided (¶ 8) that "Defendant James A. Cosmano shall not do anything that interferes with the rights or responsibilities of the receiver or that tends to reduce the value or marketability of the subject property or cause or permit anyone else to do so." Removing fixtures, appliances, and improvements from the Property and causing the damage set forth above undoubtedly reduces the value and marketability of the Property from the condition it was in when the Order issued, and Mr. Cosmano's actions in doing so, along with his employment of

---

contempt principles [. . .] parties cannot be insulated from a finding of civil contempt based on their subjective good faith."). In any event, the items that Mr. Cosmano returned to the Unit, two countertops, a sink, and a refrigerator (in addition to the numerous items he removed and has not yet returned), cannot conceivably be considered "personal property" rather than "fixtures, appliances, and improvements" which he was barred from taking by the Order.

multiple associates to assist him were a violation of a clear and unequivocal command of the Court. Menne Decl. at ¶ 6.

Fourth, and finally, the Order Enforcing Order Appointing Receiver stated (¶ 4) that Mr. Cosmano "shall immediately return to the United States Marshals Service all fixtures or appliances removed from the [Property]." Mr. Cosmano was served with a copy of the Order on March 7, 2022, but did not immediately return the fixtures and appliances to the U.S. Marshals Service. It was only after the undersigned issued a letter to Mr. Cosmano's attorney that he agreed to coordinate with the U.S. Marshals for the return of the property but instead returned only three fixtures—two countertops and the sink—and attempted to pass off a lower-quality refrigerator as the refrigerator from the Unit. Menne Decl. at ¶ 7; Brejc Decl. at ¶ 4. Mr. Cosmano's failure to immediately return the fixtures and appliances, and his continued refusal to return all of the fixtures and appliances, is also a violation of a clear and unequivocal command of the Court.

II. **The Court should require Mr. Cosmano to pay to restore the Property to the condition it was in prior to his violations of the Court's Orders, and should order him incarcerated to coerce Mr. Cosmano into compliance.**

Unlike criminal contempt, civil contempt is remedial in nature "with its purpose being either enforcement of a prior court order or compensation for losses or damages sustained as a result of noncompliance with the provisions of the order at issue." *Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir. 1981). Courts have broad discretion to fashion contempt remedies and the particular remedy chosen should be "based on the nature of the harm and the probable effect of alternative sanctions." *F.T.C. v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009).

Incarceration is an appropriate civil contempt remedy when "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus carries the

11

keys of his prison in his own pocket[.]" *United States v. Lippitt*, 180 F.3d 873, 877 (7th Cir. 1999) (internal quotation marks and citation omitted). "[T]he paradigmatic, coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative command[.]" *Id.* (internal quotation marks omitted).

Here, Mr. Cosmano's actions in accessing the Property and removing the fixtures, appliances, and improvements have diminished the value and marketability of the Property from the date the Order Appointing Receiver was entered. Menne Decl. at ¶6. The Court should order Cosmano incarcerated until he returns all fixtures, appliances, improvements, and items removed from behind the false wall. However, the mere return of this property will be insufficient at this point because, even assuming that such property remains in pristine condition, the Receiver will have to incur costs repairing and reinstalling the property, which will diminish the United States' recovery from the sale of the Property. The return of the property will also not account for the damage done to the Unit's floors, walls, and the front door. As such, Mr. Cosmano should be ordered to immediately pay an amount into the Court's Registry equivalent to the cost of returning the Property to the condition that it was in prior to his violation of the Orders, which the Receiver can request be disbursed to contractors who provide services to repair the property and replace the stolen fixtures, appliances, and improvements. That amount is at least $167,000.00, according to the Receiver. This will have the effect of paying for the necessary repairs up front, and not requiring the Receiver to pay the money required for the materials, services, and other costs in some other way, which will diminish the amount of the United States' recovery from the sale of the Property.

The United States is simultaneously filing herewith a motion to withdraw the reference to the Bankruptcy Court respecting Cosmano's adversary proceeding to determine the

dischargeability of his tax liabilities and consolidate that adversary proceeding with the contempt proceedings in this action based on overlapping facts and how the relief sought in the adversary proceeding may interact with the relief sought by this motion. *See In re Cosmano*, Case No. 19-12387 (Bankr. N.D. Ill.); *Cosmano v. United States*, Adv. Pro. No. 21-AP-00058 (Bankr. N.D. Ill.). The United States has invoked the exception to dischargeability of a tax where the debtor has "attempted in any manner to evade or defeat" collection of the tax. 11 U.S.C. § 523(a)(1)(C). The motion to withdraw the reference demonstrates that the deliberate interference with enforcement of the tax liens in this action bears on whether Cosmano willfully attempted to defeat the tax and may by itself trigger the discharge exception.

If Cosmano cannot immediately pay to retore the property to its original condition, a judgment in favor of the United States requiring Mr. Cosmano to pay the amount of the damages would at least preserve the possibility that the government may collect in the future to the extent the property damage reduces its recovery from enforcing the tax liens. Cosmano has been attempting to conceal the value of the Property for years. *See* G. Exh. D. A finding that Cosmano's conduct reflects and compounds a long-standing attempt to evade or defeat the tax, withing the meaning of 11 U.S.C. § 523(a)(1)(C) might better ameliorate the situation by causing the unpaid tax debts to be excepted from the recent discharge entered in Cosmano's bankruptcy case. In this way, the United States will be able to continue to collect the tax despite his recent bankruptcy discharge and this setback in respect to enforcement of the tax liens against his pre-bankruptcy property.

## Conclusion

The Court's Order Appointing Receiver and Order Enforcing Order Appointing Receiver set forth a number of unequivocal commands with which compliance is mandatory. Mr.

Cosmano, an attorney and an officer of the Court, cannot be permitted to violate the Court's Orders and suffer no consequences. Accordingly, the United States respectfully requests that the Court order Mr. Cosmano to show cause why he should not be found in contempt and ordered to pay compensatory damages and/or incarcerated until he fully pays and returns all of the fixtures, appliances, improvements, and items removed from behind the false wall.

Dated: April 22, 2022                                    Respectfully submitted,

                                                      DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Bradley A. Sarnell*
BRADLEY A. SARNELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-1038 (v)
202-514-5238 (f)
Bradley.A.Sarnell@usdoj.gov