IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF CSMC 2018-SP3 TRUST,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JAMES A. COSMANO, CHANDLER, CONDOMINIUM ASSOCIATION, UNITED STATES OF AMERICA, UNKNOWN OWNERS, and NON-RECORD CLAIMANTS,<br><br>　　　　Defendants.<br><br>UNITED STATES OF AMERICA,<br><br>　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE OF CSMC 2018-SP3 TRUST, JAMES A. COSMANO, CHANDLER CONDOMINIUM ASSOCIATION, and COOK COUNTY, ILLINOIS,<br><br>　　　　Counterclaim Defendants. | Case No. 1:20-cv-7032-MSS-SEC<br><br>Judge Manish S. Shah<br><br>Magistrate Judge Susan E. Cox |

**UNITED STATES OF AMERICA'S REPLY IN SUPPORT OF
JOINT AGREED MOTION TO APPROVE OF SALE OF REAL PROPERTY**

Pursuant to the Court's *Minute Entry* of February 24, 2023, ECF No. 92, the defendant

and counterclaim-plaintiff United States of America respectfully submits the following reply in

-1-

support of the *Joint Agreed Motion to Approve of Sale of Real Property*, ECF No. 88, and in rebuttal to the objection thereto of Chandler Condominium Association ("Chandler"), ECF No. 91.

In short, Chandler's objection is procedurally untenable because the Court entered default judgment against it, which judgment had the effect, in the parlance of 26 U.S.C. § 7403(c),[1] of "finally determin[ing] the merits of all claims to and liens upon the property" involved in this action, and Chandler cannot now assert a purported right to exact unpaid assessments from the prospective buyers of the property to the detriment of the closing of the judicially-directed sale of that property. But even setting the matter of default aside, Chandler's objection misses the mark on the merits, as Chandler has not demonstrated that there was the "institution of an action to enforce the collection of assessments" – a threshold predicate to the application of the Illinois statutory scheme invoked by Chandler. That scheme is thus inapposite on its face. The Court should consequently overrule the objection and approve the sale as requested in the *Joint Agreed Motion to Approve of Sale of Real Property*.

## BACKGROUND

1. This case concerns the sale of certain Chicago real estate owned by defendant James Cosmano (the "Property") that is subject to the Court's *Amended Final Judgment* respectively enforcing the federal tax liens and mortgage interest of the defendant and counterclaim-plaintiff United States and the plaintiff and counterclaim-defendant Wilmington Savings Fund Society, FSB, Not in its Individual Capacity but Solely as Owner Trustee of CSMC 2018-SP3 Trust ("Wilmington"). ECF No. 84.

---

[1] Unless otherwise specified, all "§" references are to the Internal Revenue Code (26 U.S.C.).

2. The Court's *Amended Final Judgment* specified that the government's tax liens and Wilmington's mortgage would be enforced against the Property pursuant to federal law under § 7403; specifically, by way of a judicial sale directed by the Court via its appointment of a receiver under § 7403(d), with Wilmington to be paid on the basis that its mortgage is senior to the government's tax liens. ECF No. 84, at ¶ 4; ECF No. 66.

3. By way of background, as part of the United States' efforts to enforce its federal tax liens against the Property, it previously filed an answer with a counterclaim naming Chandler as a counterclaim defendant because it was a party that "may have a lien or claim an interest in" the Property, as required by § 7403(b). ECF No. 7, at ¶¶ 4-16. Chandler was duly served on February 4, 2021, via hand delivery of the summons and copy of the United States' counterclaim complaint to one of its representatives. ECF No. 38. After Chandler failed to answer, the United States requested default against Chandler, which default the Clerk of the Court entered on August 2, 2021. ECF Nos. 39, 40.

4. The United States subsequently moved for the entry of default judgment against Chandler on August 10, 2021. ECF No. 41. While an attorney for Chandler thereafter entered an appearance in the case on September 16, 2021, ECF No. 49, Chandler did not move to set aside the default. By email dated September 30, 2021, counsel for the United States inquired of Chandler's counsel concerning its position on default and its next steps. **Ex. A**, *Nuñez-Kasten Email Chain*, at pp. 3-4, attached hereto. Counsel for Chandler responded the same day and notified counsel for the United States that Chandler had not directed him to seek *vacatur* of the default, and that he was only monitoring the sale so that Chandler would be aware of any sale of the Property. *Id.* at p. 2.

5. By opinion and order dated January 18, 2022, the Court ultimately granted the

motion for the entry of default judgment. ECF No. 64, at PageID #: 691. By way of the same order, and as part of its resolution of the cross-motions for summary judgment of the United States and Wilmington, the Court also determined that the Property should be sold by a court-appointed receiver pursuant to 26 U.S.C. § 7403, which provision the Court observed "contemplates situations like this one by authorizing courts to distribute the proceeds of any sale 'according to the findings of the court in respect to the interests of the parties and of the United States.'" *Id.* at PageID #: 690-691 (quoting 26 U.S.C. § 7403(c)).

6. The Court's ensuing February 17, 2022 *Final Judgment* and subsequent May 23, 2022 *Amended Judgment* spelled out the priority of the parties with respect to proceeds from a future receiver sale of the Property, and with respect to Chandler, provided that "[a] default and default judgment has been entered against the Chandler Condominium Association, ECF Nos. 40 and 41, and it shall receive nothing from the proceeds of the judicial sale" of the Property.[2] ECF No. 65, at ¶¶ 7; ECF No. 84, at ¶ 7.

7. To date, Chandler has not moved for *vacatur* of the Court's entry of default judgment against it, sought to file an answer setting forth the basis of its claims and defenses with respect to the Property, or appealed or otherwise contested the Court's determination that it is to receive nothing from the proceeds of the sale of the Property.

8. On February 8, 2023, the United States and Wilmington jointly moved for the Court's approval of a sale of the Property. ECF No. 88. As chronicled in that motion, the court-appointed receiver – following significant delay and a substantial diminution in the value of the

---

[2] The Court's original judgment was amended largely to account for certain legal fees claimed by Wilmington.

Property occasioned by defendant James Cosmano's willful contempt of the Court's orders – located buyers for the Property, which buyers entered a contract of sale with an initial closing date of January 27, 2023. ECF No. 88, at ¶¶ 4-5; ECF No. 88-1.

9. By minute entry dated February 9, 2023, the Court directed that "[a]ny objections to the motion to approve sale [88] must be filed in writing by 2/13/23." ECF No. 90.

10. On February 13, 2023, Chandler filed an objection to the motion for approval of the sale. ECF No. 91.

11. The gist of Chandler's objection is that it believes that the relief sought by the United States and Wilmington in ¶¶ 5 and 6 of their motion – relating, *inter alia*, to the Court's default judgment against Chandler and a requested finding that such judgment precludes Chandler from purporting to exercise rights under Illinois law against the prospective buyers – and certain "free and clear" language in the proposed *Receiver's Deed to Real Property* attached thereto, will intrude upon Chandler's asserted rights under Section 9 of the Illinois Condominium Property Act, codified as 765 ILCS 605/9; specifically, its purported right to exact six months of unpaid assessments from the prospective purchasers of the Property. ECF No. 91, at ¶ 2. According to Chandler, this right "arise[s] after the sale" as to the purchasers of the property, and neither the United States nor Wilmington has standing to contest that entitlement. *Id.* at ¶ 6. In the same vein, Chandler contends that the Court lacks jurisdiction over any such dispute because – Chandler asserts – its "right to enforce such claim does not arise until after the sale and any such dispute is only between Chandler and the purchasers." *Id.* at ¶ 7.

12. On February 24, 2023, the Court invited the United States to file a reply addressing Chandler's objection on or before March 1, 2023. ECF No. 92.

## ARGUMENT

At bottom, Chandler's objection is improper on its face because Chandler is a defaulted party and has had a default judgment finally determining the extent of any rights or claims concerning the Property entered against it, and it cannot now belatedly raise a purported interest in the Property – whether framed by Chandler as inchoate or otherwise – to avoid the consequences of that default to the detriment of the sale. But even ignoring Chandler's default judgment quandary, Chandler's objection is wrong on the substance because Chandler has not demonstrated the applicability of the Illinois statute invoked in its objection, which statute first requires the "institution of an action to enforce the collection of assessments[.]" As the pleadings and other papers in this proceeding plainly evince, no such action was commenced, and Chandler's objection points to none. For these twin reasons, Chandler's objection should be overruled and the *Joint Agreed Motion to Approve of Sale of Real Property* granted.

**I.  Chandler's Objection Improperly Attempts to Circumvent its Default**

As outlined above, Chandler was defaulted in August of 2021. Despite its appearance and being represented in the case, Chandler opted to remain in default while the United States sought, and the Court entered, default judgment against it in January of 2022. That default judgment culminated in the Court's decree in its original *Final Judgment* of February 17, 2022 (and continued in its *Amended Final Judgment* of May 23, 2022) that Chandler "shall receive nothing from the proceeds of the judicial sale" of the Property. Having been bound by the Court's decree for more than a year, Chandler cannot now attempt to assert purported claims concerning the Property that it could have, but did not, raise during the enforcement proceedings under § 7403, particularly where those overtures come at the eleventh hour and threaten to frustrate a sale long overdue and at risk.

A. **Applicable Default and Lien-Enforcement Principles**

As an initial matter, Rule 55 of the Federal Rules of Civil Procedure contemplates "two stages in a default proceeding: the establishment of the default, and the actual entry of a default judgment[,]" and "[o]nce the default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004); Fed. R. Civ. P. 55(a), (b). Notably, the entry of default "does not of itself determine rights." *United States v. Borchardt*, 470 F.2d 257, 260 (7th Cir. 1972). Rather, "[t]hat role is reserved for a default *judgment*." *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (emphasis in original).

"A court may vacate a default judgment [under Fed. R. Civ. P. 60(b)] when the moving party demonstrates (1) good cause for its default; (2) quick action to correct the default; and (3) a meritorious defense to the plaintiff's complaint." *Swaim v. Moltan Co.*, 73 F.3d 711, 722 (7th Cir. 1996) (citing *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 988 F.2d 1394, 1401 (7th Cir. 1993)); *accord Trade Well Int'l v. United Cent. Bank*, 825 F.3d 854, 860 (7th Cir. 2016) ("To vacate a default judgment, the movant must demonstrate good cause for the default, quick action to correct it, and a meritorious case"). Other factors also guide a court's decision-making on whether to grant *vacatur* of a default judgment under Fed. R. Civ. P. 60(b), including "the burden on its docket, the legitimate reliance on the default by the nonmoving party, and the policy considerations favoring termination of stalled litigation against the possibility of injustice based, in part, upon the substantive merit of the nonmovant's claims and the moving party's proffered excuses for the default." *Swaim*, 73 F.3d at 722 (citing *Dimmitt & Owens Fin., Inc. v. United States*, 787 F.2d 1186, 1193 (7th Cir. 1986)). As an additional overlay to the foregoing scheme, the Seventh Circuit further employs the "sound practice to insist, as a condition of

reinstating a case under Rule 60(b), that the defaulting party cure all defaults still within his power to cure." *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986); *accord Daniels v. Brennan*, 887 F.2d 783, 790 (7th Cir. 1989).

With respect to the judicial sale here, § 7403 permits the United States to institute a civil action in district court to enforce its tax liens to collect unpaid taxes. 26 U.S.C. § 7403(a); *United States v. Adent*, 821 F.3d 911, 914 (7th Cir. 2016) ("Section 7403 of the Internal Revenue Code allows the government to file a civil suit to enforce its lien(s) and recover payment in any case where taxes have not been paid"). With respect to such action, "[a]ll persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto[,]" and "[t]he court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property … and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States." 26 U.S.C. § 7403(b), (c).

Section 7403 notably contemplates a sale of the entire property, and while "the Supremacy Clause precludes protection of innocent third-party interests via state law[,]" the interests of innocent third parties in the property are nevertheless protected by distribution of sale proceeds pursuant to court order. *Adent*, 821 F.3d at 914-15 (citing *United States v. Rodgers*, 461 U.S. 677 (1983)); *see also United States v. Carl Cleve & Son, Inc.*, No. 3:18-cv-46-CFW-RAW, 2019 WL 3975952, at *3 (S.D.Iowa June 19, 2019) (relying on *Rodgers* to conclude that § 7403 "preempted" Iowa statute "[t]o the extent that … [it] interferes with the United States' ability to enforce federal tax liens against [the property] and the Court's authority to 'decree a

sale' thereof pursuant to 26 U.S.C. § 7403").

### B.     As a Defaulted Party, Chandler Cannot Assert Purported Rights in the Property

Here, when the United States counterclaimed to enforce its tax liens, it named Chandler as a party "having liens upon or claiming any interest in" the Property, as § 7403(b) mandated. ECF No. 7, at ¶¶ 4-16.  At that point, Chandler had the opportunity to participate in the lien-enforcement proceedings and the Court's adjudication and final determination of "the merits of all claims to and liens upon the property" pursuant to § 7403(c).  Chandler pointedly declined that opportunity even after the United States inquired about it, ECF Nos. 38-41; **Ex. A**, and the Court subsequently entered default judgment against it and determined that it was not entitled to any portion of the proceeds of the sale of the Property, ECF Nos. 64-65, 84.  To this day, Chandler has not sought *vacatur* of that default judgment under Fed. R. Civ. P. 60(b), nor has it taken the requisite steps to cure its default as would allow it to seek that relief.[3]

---

[3] The equity and reliance interests in favor of the United States and the buyers could not be clearer.  By way of the Court's final adjudication that Chandler had no legal interest in the Property, and would receive no proceeds from the sale, the Receiver informed prospective purchasers that federal law controlled and that the listing price was all that was owed, that no other party had a claim to be paid from the sale, or after, and that there was no new lien interest that would arise upon the judicial sale closing.  Chandler's position undermines that reliance, because in effect it argues that a sale by this Court, which it declined to participate in, nevertheless operates to give Chandler a right to payment and a lien interest against the Property upon closing of the sale.  Chandler had actual notice of the sale and an attorney who entered an appearance who was monitoring the docket, yet it chose to sit on its hands and hide its true intentions that it did in fact want to be paid its back assessments.  To be clear, Chandler now asserts it has an interest in the Property and wants to be paid, but the only way to do this was to affirmatively plead the interest so that it could be resolved as contemplated by § 7403.  A ruling that Chandler could circumvent that statutory scheme would be inequitable since Chandler delayed in asserting its claims, to the detriment of the buyers and the parties here, who relied on the final judgment to inform the buyers that Chandler had no claim for payment.  A court sitting in equity should not entertain Chandler's argument, which is too cute by half, that only *after* the judicial sale closes does its right to payment arise.  *Cf. Delaney v. Specialized Loan Servicing*,

(continued...)

Against that procedural backdrop, Chandler now objects to the terms of the post-judgment sale of the Property as proposed by the United States and Wilmington. Specifically, Chandler chafes at the notion that the proposed order of sale and attendant *Receiver's Deed to Real Property* do not reserve Chandler's asserted right to exact up to six months of Mr. Cosmano's unpaid condominium assessments against the prospective purchasers of the Property. But Chandler was required by statute to be joined as a party to the lien-enforcement proceeding precisely so that it could air these concerns and be heard *before* the Court determined the merits of all claims and interests – including Chandler's – against the Property. That ship has long since sailed, and, having neither cured its default nor sought *vacatur* of the Court's default judgment, Chandler is bound by the Court's determination that the Property shall be sold free and clear of all rights, title, claims, liens and interests of the parties (including any rights of redemption) and that it shall receive nothing from the proceeds of the judicial sale.[4] *See also* **Ex. B**, *Recorded Lis Pendens Notice*, attached hereto; 735 ILCS 5/2-1901 (notice of *lis pendens* binds non-parties too).

II. **The Illinois Statutory Scheme Invoked by Chandler is Inapposite Because Chandler Has Not Demonstrated the Prior Institution of An Action to Enforce the Collection of Assessments It Now Belatedly Seeks**

The United States submits that Chandler is also wrong on the substance of its objection,

---

LLC, No. 15-C-5260, 2015 WL 7776902, at *3 (N.D. Ill. Dec. 3, 2015) (noting that judicial sales and lien/mortgage foreclosure actions are cases of mixed legal and equitable remedies).

[4] To the extent that Chandler argues that the unpaid assessments are "not to come out of the proceeds of the sale[,]" ECF No. 91, at ¶ 5, that contention is simply legerdemain. Whether formally included in the purchase price or exacted from the purchasers immediately after the sale, the unpaid assessments would be a charge incurred by the purchasers with respect to the judicial sale of the Property, to the pecuniary enrichment of Chandler – *i.e.*, proceeds stemming from the judicial sale.

as the provision of the Illinois law governing condominium associations relied upon by Chandler by its terms only applies where there has been the "institution of an action to enforce the collection of assessments." Because there has been no such action here, Chandler cannot invoke that provision.

Specifically, Chandler invokes § 9(g)(4) of the Illinois Condominium Property Act, codified at 765 ILCS 605/9, to support its objection.[5] According to Chandler, its rights under the statute "arise after the sale as to the purchasers of" the Property, and obligate them "to pay up to six months of unpaid assessments and other charges that accrued during the six months *immediately preceding the institution of an action to collect those assessments and other charges*[.]" ECF No. 91, at ¶¶ 2, 3 (emphasis added).

Consistently with Chandler's paraphrasing, section 9(g)(4) provides:

> The purchaser of a condominium unit at a judicial foreclosure sale, other than a mortgagee, who takes possession of a condominium unit pursuant to a court order or a purchaser who acquires title from a mortgagee shall have the duty to pay the proportionate share, if any, of the common expenses for the unit which would have become due in the absence of any assessment acceleration *during the 6 months immediately preceding institution of an action to enforce the collection of assessments*, and which remain unpaid by the owner during whose possession the assessments accrued. If

---

[5] It should be noted that this state statute could not give Chandler a superior claim. The priorities of a tax lien under 26 U.S.C. § 6321 and a lien under a state statute are governed by federal law. *United States v. National Bank of Commerce*, 472 U.S. 713, 722 (1985). In determining which lien is "first in time" under federal law, the question of when the state lien "come[s] into existence or become[s] valid for the purpose of the rule," is "critical." *United States v. Pioneer Am. Ins. Co.*, 374 U.S. 84, 87 (1963). The Supreme Court has noted that the priority of a lien created by state law "depends on the time it attached to the property in question and became choate." *Id.* (quoting *United States v. City of New Britain*, 347 U.S. 81, 86 (1954)). A state lien becomes choate when "there is nothing more to be done[,] . . . when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *Id.* (quoting *City of New Britain*, 347 U.S. at 84). Here, any liens of Chandler are inferior under the first-in-time, first-in-right, rule because the federal tax liens arose long before any claims of Chandler.

>  the outstanding assessments are paid at any time during any action
>  to enforce the collection of assessments, the purchaser shall have
>  no obligation to pay any assessments which accrued before he or
>  she acquired title.

765 ILCS 605/9(g)(4) (Emphasis added.) Thus, "[b]y its terms, the statute is limited to assessments incurred 'during the 6 months immediately preceding institution of an action to enforce the collection of assessments.'" *Romo v. Fed. Nat'l Mortg. Ass'n*, No. 14-C-1891, 2014 WL 5620157, at *3 (N.D. Ill. Nov. 4, 2014); *see also 1010 Lake Shore Ass'n v. Deutsche Bank Nat'l Trust Co.*, 2015 IL 118372, 43 N.E.3d 1005, 1012 (Ill. 2015) (observing that under § 9(g)(4), "third party purchasers are required to pay a prior owner's unpaid assessments that accrued during the six months preceding an action to collect assessments"); *accord V & T Inv. Corp. v. West Columbia Place Condo. Assoc.*, 105 N.E.3d 889, 898 (Ill. App. 2018).

But Chandler does not contend, and neither the pleadings nor the other papers in this case (including Chandler's objection) disclose, that such an action to enforce collection of Chandler's assessments was ever commenced with respect to the Property. Wilmington commenced a mortgage foreclosure action and the United States counterclaimed to enforce its federal tax liens under 26 U.S.C. § 7403. And to the extent that Chandler casts this proceeding as such an assessment-collection action, the terms of the Court's judgment flatly belie that characterization. *See* ECF No. 84, at ¶ 4 ("The mortgage and tax liens shall be enforced pursuant to 26 U.S.C. § 7403); *see also* ECF No. 64, at PageID #: 683, 686 (determining that "Wilmington is entitled to summary judgment on its *mortgage foreclosure claim*" and that "[t]he United States is also entitled to summary judgment on its *lien-enforcement claim*") (emphases added). Because Chandler has not established its satisfaction of a predicate to its purported right to assessments from the prospective purchaser, its objection is simply without merit. Simply put, Chandler

never initiated its own action to collect Cosmano's unpaid condominium assessments, nor did it assert a counterclaim or crossclaim in this action seeking that relief. Either of those steps are a necessary precondition to asserting a claim against the buyers, so Chandler's objection should be overruled. In any event, even if 765 ILCS 605/9 were to be applied to these proceedings, the claims contemplated by that statute are claims which arise "immediately preceding institution of an action" and, as such, Chandler would be barred by the final judgment from asserting such claims.[6]

## CONCLUSION

In sum, the United States submits that Chandler's objection to the *Joint Agreed Motion to Approve of Sale of Real Property* of the United States and Wilmington should be overruled out of hand because they violate – and seek to circumvent – the terms of the default judgment entered against it. The objection should further be overruled because, on the merits, Chandler

---

[6] The Illinois *lis pendens* statute protects the exclusive jurisdiction of this Court. Pursuant to 735 ILCS 5/2-1901, "[e]xcept as otherwise provided in Section 15-1503 [pertaining to notices of foreclosure], every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other action seeking equitable relief, affecting or involving real property shall, from the time of the filing in the office of the recorder in the county where the real estate is located, of a notice signed by any party to the action or his attorney of record or attorney in fact, on his or her behalf, setting forth the title of the action, the parties to it, the court where it was brought and a description of the real estate, *be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as above stated, not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Section, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto*." (emphasis added). Here, the United States recorded a *Lis Pendens Notice* concerning this action with the Cook County Clerk, as Doc. # 2108406061, on March 25, 2021. **Ex. B**, *Recorded Lis Pendens Notice*. Thus, Chandler, as a party to this action, is bound by the Court's default judgment (determining that it is not entitled to any proceeds of the sale of the Property), whereas any prospective purchasers or other transferees – by dint of the *lis pendens* – are also bound by the Court's determination on that score.

never initiated its own action to collect Cosmano's unpaid condominium assessments, nor did it assert a counterclaim or crossclaim in this action seeking that relief. Either of those steps are a necessary precondition to asserting a claim against the buyers, so Chandler's objection should be overruled. In any event, even if 765 ILCS 605/9 were to be applied to these proceedings, the claims contemplated by that statute are claims which arise "immediately preceding institution of an action" and, as such, Chandler would be barred by the final judgment from asserting such claims.[6]

## CONCLUSION

In sum, the United States submits that Chandler's objection to the *Joint Agreed Motion to Approve of Sale of Real Property* of the United States and Wilmington should be overruled out of hand because they violate – and seek to circumvent – the terms of the default judgment entered against it. The objection should further be overruled because, on the merits, Chandler

---

[6] The Illinois *lis pendens* statute protects the exclusive jurisdiction of this Court. Pursuant to 735 ILCS 5/2-1901, "[e]xcept as otherwise provided in Section 15-1503 [pertaining to notices of foreclosure], every condemnation proceeding, proceeding to sell real estate of decedent to pay debts, or other action seeking equitable relief, affecting or involving real property shall, from the time of the filing in the office of the recorder in the county where the real estate is located, of a notice signed by any party to the action or his attorney of record or attorney in fact, on his or her behalf, setting forth the title of the action, the parties to it, the court where it was brought and a description of the real estate, *be constructive notice to every person subsequently acquiring an interest in or a lien on the property affected thereby, and every such person and every person acquiring an interest or lien as above stated, not in possession of the property and whose interest or lien is not shown of record at the time of filing such notice, shall, for the purposes of this Section, be deemed a subsequent purchaser and shall be bound by the proceedings to the same extent and in the same manner as if he or she were a party thereto*." (emphasis added). Here, the United States recorded a *Lis Pendens Notice* concerning this action with the Cook County Clerk, as Doc. # 2108406061, on March 25, 2021. **Ex. B**, *Recorded Lis Pendens Notice*. Thus, Chandler, as a party to this action, is bound by the Court's default judgment (determining that it is not entitled to any proceeds of the sale of the Property), whereas any prospective purchasers or other transferees – by dint of the *lis pendens* – are also bound by the Court's determination on that score.

has not demonstrated that the Illinois statute invoked in its objection applies to this proceeding or undermines the final judgment.

## STATEMENT OF CONCURRENCE

Marc Cervantes, Esquire, of Cervantes Chatt & Prince, P.C., on behalf of the Court Appointed Receiver, Ginger Menne, joins in the United States' reply.

Respectfully submitted:

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division, U.S. Department of Justice

*/s/ Noah D. Glover-Ettrich*
NOAH D. GLOVER-ETTRICH
*/s/ Jeffrey N. Nuñez*
JEFFREY N. NUÑEZ
BRADLEY A. SARNELL
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-514-9838 (v)
202-514-5238 (f)
Noah.D.Glover-Ettrich@usdoj.gov
Jeffrey.N.Nunez@usdoj.gov
Bradley.A.Sarnell@usdoj.gov